IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06CV392-03-MU

| | |
|---|---|
| GEORGE W. GANTT-EL, )<br>)<br>Plaintiff, - )<br>)<br>v. )<br>)<br>BOYD BENNETT, et., al, )<br>)<br>Defendant. )<br>_____) | **O R D E R** |

**THIS MATTER** comes before the Court on initial review of Plaintiff's Complaint under 42 U.S.C. § 1983, filed September 13, 2006. (Document No. 1 ); Plaintiff's Supplemental Complaint filed October 4, 2006 (Document No. 5) and Plaintiff's Motion to "Relate All Issues" (Document No. 4.) For the reasons stated herein Plaintiff's Complaint and Supplemental Complaint will be denied for failure to state a claim and Plaintiff's "Motion to Relate All Issues" will be denied.

In his often rambling 109 paragraph complaint naming eighteen defendants Plaintiff complains about a variety of unrelated incidents by staff at Lanesboro Correctional Institution. Plaintiff's Complaint fails to state a claim for relief and for the reasons stated in this Order must be dismissed. Similarly, his 132 paragraph Supplemental Complaint is also a rambling litany of daily complaints naming thirteen of the original eighteen defendants and naming three new Defendants; Nurse Bays, Correctional Officer Ratliff and Notary Public, E. Martin.

**The Complaint**

The first half of Plaintiff's Complaint (and also portions of his Supplemental Complaint) relate a medical claim in which Plaintiff alleges that staff at Lanesboro were deliberately indifferent

1

to his medical needs. Plaintiff alleges that on September 6, 2006, while having his finger stuck to record his blood sugar reading, Nurse Carelocke informed Plaintiff that he did not have an up to date finger stick order (Complaint ¶.) Plaintiff became angry that he had not been so informed before that day when he could have been informed a month earlier. Nurse Carelocke opined that perhaps an updated finger stick was not ordered because maybe Plaintiff no longer needed the medication he was taking (Complaint ¶ 19.) Plaintiff was angry and took his medication and left to go eat. Plaintiff returned to medical after he had eaten with his new bottle of Glyburide pills. In route to medical, Plaintiff came upon Defendant Nichols and Defendant Hardesty. According to Plaintiff defendant Nicholas was coaching defendant Hardesty as to what to say she witnesses between Plaintiff and Defendant Carelocke. (Complaint 22.) Plaintiff tried to return the bottle of pills to Defendant Carelocke since she told him earlier that the fact that he had no updated order for a finger stick may mean he no longer needed to take his medication. Nurse Carelocke informed Plaintiff that medicine gets turned in at the main medical unit (Complaint ¶ 26.) Plaintiff then took the medicine to main medical and was given a refusal slip by Nurse Walruth (Complaint ¶ 32.) Plaintiff left the medical unit and went back to Nurse Carelocke to ask her again why she waited so long to tell Plaintiff that he had no current order for a finger stick. Plaintiff left "after concluding that she had baited and entertionally (sic) created the tension earlier and possibly conspiritorially (sic)." (Complaint ¶ 37.) During the next shift, Plaintiff went to have another finger stick done. Defendant Hilldreth "outright lied when she stated that nurses cant (sic) tell inmates to stop medication as nurse Carelocke had done earlier." (Complaint at 39.) Defendant Hilldreth stepped away from the window to respond to a medical code 900. When she returned, Plaintiff requested the pills he had turned in earlier back. He showed Nurse Hilldreth his own personal records which indicate that he

2

had been seen by a chronic care nurse on July 11, 2006 and she reordered finger sticks at that time (Complaint §§ 43-46.) Defendant Hilldreth informed Plaintiff that if he wanted to pills back he would have to put in a sick call request.

A prisoner makes out a claim under the Eighth Amendment if he can establish that prison medical staff was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). In order to be deliberately indifferent, a defendant must know of and disregard an objectively serious condition, medical need or risk of harm. Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). Deliberate indifference may be demonstrated by either actual intent or reckless disregard. Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Here Plaintiff's Complaint is so vague and lacking in fact that, even giving the Plaintiff the benefit of liberal pleadings given to pro se prisoners, this Court cannot find facts supporting deliberate indifference. At most, it appears to be either a lack of communication or a disagreement between Plaintiff and Defendants regarding orders for further finger sticks.

This type of disagreement is exactly this kind of problem that could be cleared up by following the full grievance procedure at the Institution. Here, the incident occurred on September 6, 2006. Plaintiff claims to have filed a grievance, however, because this lawsuit was dated on September 11, 2006 and filed on September 13, 2006, it is clear to this Court that Plaintiff could not have exhausted the three stages of the administrative remedy process thereby exhausting his administrative remedies prior to filing a lawsuit in district court.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust "such administrative remedies as are available" before suing over prison conditions. There is no doubt that the PLRA's exhaustion requirement is mandatory. See Anderson v. XYZ

3

Correctional Heath Services, 407 F.3d 674, 676-77 (4th Cir. 2005) citing Porter v. Nussle, 534 U.S. 516, 524 (2002) ("once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy and effective. Even when the prisoner seeks relief not available in the grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." The district court must determine whether exhaustion was complete at the time of filing of the Complaint. Johnson v. Jones, 340 F.3d 624 (8th Cir. 2003). Here, the timing alone makes it clear to the Court that Plaintiff could not have exhausted his administrative remedies with respect to his claim of deliberate indifference. Plaintiff claims that the incident giving rise to his deliberate indifference claim occurred on September 6, 2006 and Plaintiff filed this lawsuit on September 13, 2006. Plaintiff could not have exhausted all three steps of the grievance process in seven days. In any event, Plaintiff has not stated a claim of deliberate indifference in his Complaint and therefore this claim is dismissed.

The second half of Plaintiff's Complaint (and also his Supplemental Complaint) is more disjointed. First, Plaintiff complains about Defendants Pitman and Wilson purposely setting off a fire alarm while he was gone from the unit to get his medication. Plaintiff claims that when he returned, Defendants Pitman and Wilson were laughing (Complaint ¶¶ 56-57.) Plaintiff also complaints that Defendant Wilson ". . . exhibited her promicuous (sic) and lascivious attributes when she illuminated herself to therein each Pod by turning on the control booth lights. As if on command inmates began taking turns going in and out of the units showers to masturbate off of her as she watched and encouraged their conduct . . " (Complaint ¶ 54.) Plaintiff contends that Defendant Wilson's conduct created an unsafe environment and left the showers in an unsanitary condition.

Next, Plaintiff contends that "... upon information and belief that he [Defendant Parsons] again censored plaintiff's mail of that day including two civil actions and letter to defendant smith and the sick call clip." (Complaint ¶ 58.) Plaintiff also contends that on September 7, 2006 while at breakfast, Defendant Davis positioned herself between Plaintiff and another prisoner and stated loudly that "she Davis - had read an inmates medical records the day before and knew all of his medical history." (Complaint ¶ 63.) Plaintiff claims that he perceived the threat and knew the inmate to be in top shape and healthy. (Complaint ¶ 65.) Plaintiff further complains that on September 7, 2006 while in lock down he and others were forced to endure excessive noise being made by newly assigned inmates just coming off lock up. Suddenly the excessive noise stopped. Plaintiff got out of bed to investigate and witnessed "...defendant Freeland setting (sic) in a chair being promicuous (sic) with her legs wide-open and encouraging inmates to commit sex acts." (Complaint ¶ 72.) Plaintiff complains that on September 12, 2006 after 11:00 p.m., he was kept awake because of excessive noise by inmates directed by Defendants Wilson and Pitman to pack up their things for transfer out of the institution. Inmates were also allowed to roam freely during this time making noise and Defendants allowed the showers to run all night keeping Plaintiff from resting (Supplemental Complaint ¶¶ 30, 31.)

On September 8, 2006 while going to the dining hall, Plaintiff witnessed Captain Parson leaving from the gate medication window where Defendant Carelocke was working. "Plaintiff witnesses said inter-action (sic) and became extremely angered and physically and psychologically injured by said implications and traumatized to the point of being unable to feed the diabetic pills that plaintiff had taken outside of the dinning hall at the water fountain. Said acts and omissions subjected plaintiff to pain and future harm "inter alia" to later suffer a diabetic reaction upon

5

returning to his cell." (Complaint ¶ 78.) Later in the day while returning from the chaplains library, Plaintiff "walked right between Defendant A. Jackson and a showering inmate masturbating off of her as she watched." (Complaint ¶ 86.) "Defendants Jackson, reknowned (sic) promicuous (sic) conduct so angered the plaintiff that said unlawful acts and omissions, prompted the initiation forthwith of this ongoing civil action against her and other staff," (Complaint ¶ 88.)

Plaintiff's allegations in the second half of his Complaint and in his Supplemental Complaint are rambling, disjointed and conclusory. Taking all of Plaintiff allegations as true, Plaintiff has not stated any constitutional violations. Moreover, the dates of the incidents that give rise to this Complaint occurred on September 6 through September 9, 2006. Plaintiff dated the instant Complaint on September 11, 2006 and it was filed in this Court on September 13, 2006. As stated above, the PLRA requires an inmate to fully exhaust his remedies prior to filing a lawsuit in federal court. Here, the timing alone makes it clear to the Court that Plaintiff could not have exhausted his administrative remedies with respect to his claims outlined in his Complaint.

**The Supplemental Complaint**

Plaintiff Supplemental Complaint is a continuation of his Complaint in that it contains more of the same litany of alleged wrongs done to him on a daily basis at Lanesboro Correctional Institution. Plaintiff lists thirteen of the eighteen defendants named in his original Complaint and adds three new defendants. The Court has reviewed Plaintiff's Supplemental Complaint and inasmuch as this Court has considered the claims in the Complaint against the thirteen Defendants also named in the Supplemental Complaint and that Plaintiff has failed to add any additional facts

that cause this Court to alter said analysis,[1] this Court concludes that Plaintiff has failed to state a claim for relief in his Supplemental Complaint as to the thirteen Defendants also named in the Complaint. The Court will now consider the claims contained in Plaintiff's Supplemental Complaint against the three new Defendants.

In his Supplemental Complaint, Plaintiff adds Nurse Bays as a defendant to this action. Plaintiff alleges that on September 21, 2006 he observed Nurse Walruth training a new Lanesboro Correctional Institution Nurse, Nurse Bays (Complaint ¶ 79.) Eleven paragraphs later, with no mention of Nurse Bays in between, Plaintiff alleges that Nurse Bays together with Defendants Carelocke, Walruth, and Chief Health Care Provider Smith, were "intentionally purging and doctoring" his medical records. This appears to be the only allegation against Nurse Bays in the Supplemental Complaint. In order to survive a review for factual frivolousness, a plaintiff proceeding in forma pauperis may not rely on merely "conclusory allegations." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996), citing White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989); see also Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994) (plaintiff must present more than naked allegations to survive dismissal). Plaintiff offers no facts in support of his conclusory allegation against Nurse Bays and therefore this claim is dismissed for failure to state a claim for relief.

Defendant E. Martin is a notary public and a secretary at Lanesboro Correctional. In his Supplemental Complaint Plaintiff alleges that on two occasions he took legal papers to Ms. Martin to notarize for him and she looked through his legal papers before notarizing. Later, Defendants named in his legal documents seemed to know about the existence of such legal papers. Plaintiff

---

[1] This Court dismissed Plaintiff's original Complaint as it was conclusory and failed to state any claims upon which relief could be granted. The Court bases its dismissal of Plaintiff's Supplemental Complaint on the same reasoning.

suggests that Ms. Martin must have shared his confidential information. Like the allegation against Nurse Bays, this allegation against Ms. Martin is conclusory and will not survive this Court's factual frivolity review. [2]

Correctional Officer Ratliff is also named in Plaintiff's Supplemental Complaint and was not named in the original Complaint. This Court has spent considerable time reviewing the Supplemental Complaint and concludes that there are no allegations directed at Defendant Ratliff other than him being at work on particular days. Plaintiff does not specify any wrongful conduct attributed to Officer Ratliff, therefore, he is dismissed.[3]

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that

1) Plaintiff's Complaint (Document No. 1) and Supplemental Complaint (Document No. 5) are Dismissed for failure to state a claim for relief pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[4]

2) Plaintiff's Motion to Relate All Issues" (Document No. 4) is Denied.[5]

---

[2] It also appears that this claim is not exhausted.

[3] Furthermore, to the extent Plaintiff contends that he has alleged wrongful conduct that can be attributed to Officer Radliff, it appears that Plaintiff has not exhausted the administrative grievance process as to Officer Radliff.

[4] The Court notes that even if Plaintiff had stated a claim for relief, it appears that Plaintiff did not exhaust his administrative remedies prior to filing his Complaint.

[5] Plaintiff filed a motion requesting that all of his other claims including claims pending in another district court and claims pending before the North Carolina Industrial Commission be related to this action. Plaintiff claims that to do so would expedite the proceedings and would be in the interest of justice. The Court does not perceive itself to have the authority to grant such a motion and in any event declines to do so.

**SO ORDERED.**

Signed: October 10, 2006

Graham C. Mullen
United States District Judge